**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**WALISSON JOAQUIM DA SILVA,**

Plaintiff,

vs.

**JOSEPH B. EDLOW, DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION SERVICES;**

**MARKWAYNE MULLIN, SECRETARY OF HOMELAND SECURITY; AND**

**CARRIE M. SELBY, ASSOCIATE DIRECTOR, SERVICE CENTER OPERATIONS, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, EACH IN AN OFFICIAL CAPACITY,**

Defendants.

Case No. 8:26-cv-__________

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 701-706**

Plaintiff Walisson Joaquim da Silva, by and through his counsel of record, alleges as follows:

## INTRODUCTION

1. Plaintiff Walisson Joaquim da Silva is a systems analyst and software developer in the field of information technology. On February 6, 2026, he filed a Form I-140, Immigrant Petition for Alien Worker, Receipt No. IOE0935550551 (the "Petition"), seeking classification as an individual of extraordinary ability under section 203(b)(1)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1153(b)(1)(A).

2. The governing regulation provides that, absent a one-time major internationally recognized award, a petitioner establishes the required initial evidentiary showing by satisfying "at least three" of ten enumerated criteria. 8 C.F.R. § 204.5(h)(3). U.S. Citizenship and Immigration Services ("USCIS") found that Mr. da Silva satisfied three: participation as a judge of the work of others, 8 C.F.R. § 204.5(h)(3)(iv); authorship of scholarly articles in the field, 8 C.F.R. § 204.5(h)(3)(vi); and performance in a leading or critical role for organizations with a distinguished reputation, 8 C.F.R. § 204.5(h)(3)(viii). It so found in its June 8, 2026 Notice of Intent to Deny ("NOID"), and it so found again in its July 24, 2026 decision denying the Petition (the "Decision").

3. The Decision therefore rests entirely on the second step of the agency's analysis, the "final merits determination," in which USCIS concluded that the evidence does not show "sustained national or international acclaim" or that Mr. da

Silva is "one of that small percentage who has risen to the very top of the field of endeavor." That conclusion was reached without considering the response Mr. da Silva filed to the NOID. The Decision records that the response "was received on July 10, 2026, and has been added to the record," and then says nothing further about it. It does not mention the independent expert opinion of David M. Hansen, Ph.D., Professor Emeritus of Electrical Engineering and Computer Science at George Fox University and Staff Software Engineer at the Pacific Northwest National Laboratory, submitted with that response. It does not mention the response's twenty-page analysis of the record. Its final merits discussion instead repeats, in substance and often in words, the three paragraphs of the NOID that the response had answered point by point.

4. The Decision's final merits analysis considers only the evidence submitted under the three criteria it found satisfied, and considers each in isolation. It does not weigh the "Gasto na Medida" personal-finance application Mr. da Silva conceived and built, which has been adopted by more than 50,000 members of the Brazilian public and has remained in continuous public use since 2019; the Competency Development Monitoring System he designed in 2013, which the SENAI FATESG faculty adopted and still uses; the Academic and Professional Merit distinction conferred under a university ordinance reserved for professionals

who "stand out significantly"; his membership in the IEEE; or his $130,000 United States compensation measured against the federal government's own wage data for his occupation. A determination that the statute and regulation require to be made on the "totality" of the evidence was made on a fraction of it.

5. Where the Decision does state reasons, it measures the evidence against requirements the statute and regulation do not contain: that a judge of the work of others must show "a pattern of such activities" and "regularly evaluate[] the work of others"; that scholarly authorship must be accompanied by "citations," publication by "high-impact entities," and proof that a book was "widely distributed or sold in significant quantities"; that a critical role for a distinguished organization must have "extended beyond his employer"; and that "sustained" acclaim means acclaim "maintained" at "a comparable level" to the present. Mr. da Silva objected to each of those requirements in the administrative record, in his response to USCIS's Request for Evidence and again in his response to the NOID. The Decision does not acknowledge the objections.

6. The Decision is also inconsistent with itself and with the agency's own earlier statements in this adjudication. It finds that Mr. da Silva "played a critical role for Fujioka in Brazil" and that "Fujioka Brazil has a distinguished reputation," and then discounts the same evidence because it does not show that his role

"extended beyond his employer." It describes the same 2018 and 2019 pay records that the NOID had described as showing a "Senior Programmer" as now showing a "Computer Operator," without explanation, and in the face of record evidence that Mr. da Silva was promoted to Senior Software Developer in 2016.

7. Mr. da Silva also pleads with an eye to what experience teaches often follows the filing of an action like this one: the agency reopens the challenged denial on its own motion, see 8 C.F.R. § 103.5(a)(5), issues a fresh request for evidence or notice of intent to deny, and then denies the petition again, this time with a decision drafted in the shadow of the complaint to supply the reasoning the original decision lacked. The APA does not permit an agency to defend its action on rationales the decision itself never articulated, *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943), and a defendant's voluntary about-face in response to litigation does not moot the claim it is designed to evade, *FBI v. Fikre*, 601 U.S. 234 (2024). This Court's jurisdiction attached upon filing, and Mr. da Silva asks the Court to retain it through any such maneuver.

8. An agency acts arbitrarily and capriciously when it fails to consider an important aspect of the problem, offers an explanation that runs counter to the evidence before it, or fails to articulate a rational connection between the facts found and the choice made. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,

463 U.S. 29, 43 (1983). A final merits determination that ignores the petitioner's response and the expert opinion it contains, weighs a fraction of the record, and applies requirements the regulation does not state does all three. Mr. da Silva respectfully asks this Court to declare the denial unlawful, set it aside, and order the Petition approved, or in the alternative to remand with instructions.

## JURISDICTION AND VENUE

9. This action arises under the INA, 8 U.S.C. § 1101 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331.

10. The denial of an immigrant visa petition is reviewable. Whether a petitioner has established eligibility for the classification sought is governed by the mandatory standards of the statute and regulation, and once eligibility is established the statute directs that the Secretary "shall . . . approve the petition." 8 U.S.C. § 1154(b). That determination is not committed to agency discretion, and 8 U.S.C. § 1252(a)(2)(B)(ii) does not bar its review. *Mejia Rodriguez v. U.S. Dep't of Homeland Sec.*, 562 F.3d 1137, 1143-45 (11th Cir. 2009) (statutory eligibility determinations "are not ones that involve discretion," and § 1252(a)(2)(B)(ii) does not preclude district court review of them); *Bouarfa v. Mayorkas*, 604 U.S. 6 (2024) (contrasting the mandatory "shall . . . approve" command of § 1154(b) with the

discretionary revocation authority of § 1155); *Spencer Enterprises, Inc. v. United States*, 345 F.3d 683, 687-90 (9th Cir. 2003); *Kazarian v. USCIS*, 596 F.3d 1115 (9th Cir. 2010) (reviewing denial of an extraordinary-ability I-140 petition).

11. The denial of the Petition is final agency action for which there is no other adequate remedy in a court. 5 U.S.C. § 704. An appeal to the Administrative Appeals Office is permissive, not mandatory, 8 C.F.R. § 103.3(a), and the APA does not require exhaustion of optional administrative appeals. *Darby v. Cisneros*, 509 U.S. 137, 146-47, 154 (1993).

12. Declaratory and further relief are authorized by 28 U.S.C. §§ 2201-2202, and relief pending review and on review is authorized by 5 U.S.C. §§ 705-706.

13. Venue is proper in this District under 28 U.S.C. § 1391(e)(1)(C). Defendants are officers of the United States sued in their official capacities; Plaintiff resides in Hillsborough County, Florida, within this District and this Division; and no real property is involved in this action. Assignment to the Tampa Division is proper under Local Rule 1.04 because Plaintiff resides in Hillsborough County.

**PARTIES**

14. Plaintiff WALISSON JOAQUIM DA SILVA is a citizen of Brazil who resides in Riverview, Hillsborough County, Florida. He last entered the United

States on January 10, 2019, and is lawfully present in F-2 nonimmigrant status, admitted for duration of status. He is the petitioner and beneficiary of the Petition.

15. Defendant JOSEPH B. EDLOW is the Director of USCIS, the component of the U.S. Department of Homeland Security that adjudicated and denied the Petition through its Texas Service Center in Irving, Texas. He is sued in his official capacity and is responsible for the administration of USCIS and for the adjudication of immigrant visa petitions, including the Petition.

16. Defendant MARKWAYNE MULLIN is the Secretary of Homeland Security and is sued in his official capacity. He is charged with the administration and enforcement of the immigration laws. 8 U.S.C. § 1103(a).

17. Defendant CARRIE M. SELBY is the Associate Director, Service Center Operations, USCIS, and is sued in her official capacity. The RFE, the NOID, and the Decision each issued over her signature.

## LEGAL FRAMEWORK

18. INA § 203(b)(1)(A), 8 U.S.C. § 1153(b)(1)(A), makes immigrant visas available to an individual with "extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation," who "seeks to enter the United States to

continue work in the area of extraordinary ability," and whose "entry into the United States will substantially benefit prospectively the United States."

19. The implementing regulation defines "extraordinary ability" as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2).

20. A petition must be accompanied by evidence of a one-time achievement (a major, internationally recognized award) or by evidence satisfying "at least three" of ten enumerated criteria. 8 C.F.R. § 204.5(h)(3). As relevant here, those criteria include: documentation of the person's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field, id. § 204.5(h)(3)(i); documentation of membership in associations in the field which require outstanding achievements of their members, as judged by recognized national or international experts, id. § 204.5(h)(3)(ii); participation as a judge of the work of others in the same or an allied field, id. § 204.5(h)(3)(iv); original business-related contributions of major significance in the field, id. § 204.5(h)(3)(v); authorship of scholarly articles in the field, in professional or major trade publications or other major media, id. § 204.5(h)(3)(vi); performance in a leading or critical role for organizations or establishments that have a distinguished reputation, id. § 204.5(h)

(3)(viii); and a high salary or other significantly high remuneration for services, in relation to others in the field, id. § 204.5(h)(3)(ix).

21. The regulation further requires that the petition be accompanied by "clear evidence that the alien is coming to the United States to continue work in the area of expertise," which may be shown by letters from prospective employers, evidence of prearranged commitments such as contracts, or a statement from the beneficiary detailing plans on how he or she intends to continue work in the United States. 8 C.F.R. § 204.5(h)(5). No offer of employment is required. Id.

22. The standard of proof is a preponderance of the evidence. *Matter of Chawathe*, 25 I&N Dec. 369, 375-76 (AAO 2010). Where the evidence is relevant, probative, and credible, the adjudicator must consider it; a petitioner who shows that a claimed fact is more likely than not true has carried the burden. Id.

23. In *Kazarian v. USCIS*, 596 F.3d 1115, 1121-22 (9th Cir. 2010), the decision USCIS itself invokes as the source of its adjudicative framework, the court of appeals held that the agency may not condition the regulatory criteria on requirements that appear nowhere in the regulation's text, and that the agency erred in imposing extra-regulatory evidentiary demands at the criteria-counting stage. Under the two-step framework the agency derives from *Kazarian*, once a petitioner satisfies at least three criteria, the agency proceeds to a "final merits determination"

in which it evaluates the evidence "in its entirety" to determine whether the petitioner has shown, by a preponderance of the evidence, sustained national or international acclaim and standing among the small percentage at the very top of the field.

24. The USCIS Policy Manual is internal guidance. It was not promulgated through notice-and-comment rulemaking under 5 U.S.C. § 553 and does not carry the force and effect of law. *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 96-97 (2015); *Christensen v. Harris County*, 529 U.S. 576, 587 (2000). Under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the reviewing court exercises independent judgment in determining the meaning of the governing statute and may not defer to an agency interpretation merely because a text is ambiguous. The agency's reading of its own regulation is likewise entitled to no deference unless the regulation is genuinely ambiguous after exhausting the traditional tools of construction. *Kisor v. Wilkie*, 588 U.S. 558, 573-75 (2019).

25. The Policy Manual nonetheless binds the agency's own officers. It directs that, in the final merits determination, "[t]he officers consider all evidence in the totality," that they "must articulate the specific reasons" for the conclusion reached, and that an officer "may not limit the kind of evidence the officer thinks the

person should be able to submit and deny the petition if that particular type of evidence . . . is absent." 6 USCIS-PM F.2(B)(2).

## FACTUAL ALLEGATIONS

### A. Mr. da Silva's Career and Recognition

26. Mr. da Silva has worked in software development and systems analysis for more than fifteen years. In 2013, while completing his degree in Systems Analysis and Development at Faculdade SENAI FATESG in Goiânia, Brazil, he designed and built the Competency Development Monitoring System ("SMDC"), a web-based platform for competency-based assessment of student performance. According to the program coordinator who oversaw the laboratory in which it was built, the system was adopted by the institution, refined across successive iterations, and remains in use there. SENAI is recognized by the United Nations as one of the leading educational institutions in the Southern Hemisphere and by the International Labour Organization as a model for professional education in Latin America.

27. From 2011 to 2018, Mr. da Silva worked at Fujioka Eletro Imagem S/A, a Brazilian household-appliance and electronics retailer founded in 1964, with a workforce in the thousands, ranked tenth among retailers in its sector in the most recent national ranking of the Brazilian Society of Retail and Consumption. He rose from technician to Senior Software Developer, to which he was promoted in 2016.

In 2017 he designed and deployed the "Pedido PA" system, the automated inventory-allocation infrastructure on which the company's network of stores and distribution centers operates. According to the company's Systems Development Manager, the system reduced an allocation process that had taken days to one completed in hours and contributed to a reduction of approximately seventy percent in stagnant inventory across the company. He also delivered the mobile sales systems that allow the company's representatives to complete transactions on tablets and smartphones.

28. In 2019, Mr. da Silva conceived, designed, and programmed, with a business partner, "Gasto na Medida," an Android personal-finance application distributed on the Google Play marketplace. The application has been adopted by more than 50,000 users in Brazil, has remained live on the marketplace continuously since its release, and carries publicly visible user reviews. According to the application developer who worked with him on it, the application anticipated a market need and was followed by competing products with similar features.

29. Mr. da Silva is the author of the book *Pontes Digitais* (*Digital Bridges*), ISBN 978-65-84010-00-0, registered with the Câmara Brasileira do Livro, Brazil's national ISBN registry, and of the article "Inventory Management Automation with Agile Architecture: A Case Study in the Retail Sector," published in May 2025 in

the IOSR Journal of Business and Management, a double-blind peer-reviewed, ISSN-registered journal, which sets out for an international professional readership the retail-automation methodology he developed for the Pedido PA project. He is the co-author of the published SMDC research paper.

30. On December 4, 2024, Centro Universitário Unifacear, a university center in Paraná, Brazil, seated Mr. da Silva on the examination committees for the final course projects of its Systems Analysis and Development program, where he evaluated student projects on management information systems, cloud computing, and cybersecurity alongside the other members of the committee. The institution's invitation stated that he was chosen because his "expertise and experience in the field will be of immense value."

31. In 2025, Centro Universitário Santa Cruz de Curitiba conferred on Mr. da Silva its Academic and Professional Merit distinction in Information Technology and Software Engineering, issued by the institution's Rector. Under the governing ordinance, Portaria GR 048/2024, the distinction is reserved for professionals who "stand out significantly," requires a documented nomination by a member of the University Council for Teaching, Research, and Extension, consultation with at least three members of that Council, and a granting directive issued by the institution's President.

32. Mr. da Silva is a Member of the Institute of Electrical and Electronics Engineers ("IEEE"), the principal professional body in his field, and has participated in its Orlando and Florida West Coast Sections. He holds an executed employment agreement with Priano Group, LLC, for the position of Senior Software Developer – Enterprise Systems Optimization at a base salary of $130,000 per year, to commence upon his authorization to work. The U.S. Bureau of Labor Statistics places the 2024 median annual wage for Computer Systems Analysts at approximately $103,790.

**B. The Petition, the Request for Evidence, and the Response**

33. Mr. da Silva filed the Petition on February 6, 2026, through prior counsel, with nineteen exhibits of documentary evidence, and requested premium processing. USCIS assigned Receipt No. IOE0935550551 and adjudicated the Petition at its Texas Service Center.

34. On February 26, 2026, USCIS issued a Request for Evidence ("RFE") from its Texas Service Center, over the signature of Defendant Selby as Acting Associate Director, with a response deadline of May 26, 2026. The RFE stated that the judging criterion, 8 C.F.R. § 204.5(h)(3)(iv), appeared to have been met, and sought further documentation as to the awards, membership, original-contributions, scholarly-articles, leading-or-critical-role, and high-remuneration criteria, and as to

Mr. da Silva's intention to continue work in his field in the United States and the prospective benefit of his entry to the United States. The RFE found the authorship criterion unmet because "the ISBN search for the book yielded no results" and the book "does not appear to have been published," and found the leading-or-critical-role criterion unmet because the evidence did not show that his roles for "SENAI, Fujioka and Foton" were leading or critical or that those organizations had a distinguished reputation. As to high remuneration, it stated that "the pay slips listed him as a senior programmer," and it identified, as evidence he could submit, "[i]nformation from the U.S. Department of Labor or similar sources that show the comparison of salaries." As to original contributions, it identified "[t]estimony and/or support letters from experts" and "[e]vidence of the beneficiary's work being implemented by others." The RFE advised that, at the final merits stage, "USCIS will evaluate all of the evidence in the record," and that "the decision will be based on the initial evidence submitted upon filing and all additional evidence submitted in response to this request."

35. On May 21, 2026, Mr. da Silva, through counsel Marcelo Gondim, Esq., responded to the RFE. The response supplied, among other things: an updated beneficiary statement and a statement of prospective benefit to the United States; the ordinance governing the Santa Cruz distinction and an institutional declaration

with certified translation describing its criteria and selection process; IEEE membership criteria and the U.S. Department of Labor O*NET occupational profile for Computer Systems Analysts; the letter of Fujioka's Systems Development Manager describing the Pedido PA system and its quantified results, and documentation of the Gasto na Medida application; publication verification and ISBN registry documentation for the book and the journal article; documentation of Fujioka's scale, revenues, and national market position; and the Priano Group employment agreement with comparative wage data.

36. The RFE response expressly preserved objections to any evidentiary demand not found in the statute or regulation, including, as to the awards criterion, any requirement of "prior winners lists and fixed award counts"; as to the original-contributions criterion, any requirement of "industry-wide transformation"; and, as to the final merits determination, any "improper conflation of the criteria step with the final merits step" and any "arbitrary discounting of evidence."

**C. The Notice of Intent to Deny and the Response**

37. On June 8, 2026, USCIS issued a NOID over the signature of Defendant Selby. The NOID determined that Mr. da Silva "has provided sufficient documentation to establish" three regulatory criteria: participation as a judge of the work of others, 8 C.F.R. § 204.5(h)(3)(iv); authorship of scholarly articles, 8 C.F.R.

§ 204.5(h)(3)(vi); and performance in a leading or critical role for organizations with a distinguished reputation, 8 C.F.R. § 204.5(h)(3)(viii). Two of those three, authorship and the critical role, were criteria the RFE had found unmet; the NOID found them established after the RFE response. It found the awards, membership, original-contributions, and high-remuneration criteria not established. As to high remuneration, the NOID described the 2018 Fujioka pay slips as "showing a monthly salary of 4,997 Reais as Senior Programmer" and stated that "the salary in Brazil cannot be compared with the ones from the U.S."

38. Proceeding to the final merits determination, the NOID stated three grounds for its intent to deny. First, as to judging: "such event happened once in 2024, which is insufficient to establish a sustained national or international acclaim. In addition, the record does not show how the university selected the judges and that his judging actions extends over an extensive period of time. Additionally, the record shows just few research work that he judged and not a large quantity." Second, as to authorship: "the record has no evidence that others cited the articles or the book, that his work has been widely cited by others, and that the articles and the book advanced the field and set him apart." Third, as to the critical role: the letters show "a progressive experience gained over years," but "the documentation does not discuss how his critical position held with Fujioka impacted the field of claimed

expertise beyond his employer," and "the record lacks evidence showing that his critical role with Fujioka has been for an extensive period of time." The NOID also stated that "sustained" acclaim "must be maintained," and that a beneficiary "may have achieved extraordinary ability in the past but then failed to maintain a comparable level of acclaim thereafter." The NOID invited evidence of sustained acclaim and of standing among the small percentage at the top of the field, allowed thirty days for a response, and stated that "USCIS will carefully review any evidence that the petitioner submits."

39. In July 2026, Mr. da Silva, again through Mr. Gondim, responded to the NOID with a twenty-page brief and the independent expert opinion letter of David M. Hansen, Ph.D., dated July 8, 2026. The Decision acknowledges that the response "was received on July 10, 2026, and has been added to the record."

40. The NOID response addressed the final merits determination on the whole record. It traced three continuous and overlapping arcs of recognition: the eight-year escalation of responsibility at Fujioka culminating in the Pedido PA deployment (2011-2019); the adoption of Gasto na Medida by more than 50,000 members of the national public and its continuous public use from 2019 to the present; and the formal institutional recognitions of 2023-2025, namely the published book and article, the Unifacear examination-committee appointment, and

the Santa Cruz distinction. It compared that record to the U.S. Department of Labor's O*NET description of the ordinary content of the occupation. It explained that each interested attestation in the record is corroborated by at least one disinterested source: a public marketplace, two academic institutions, and the national ISBN registry.

41. The NOID response answered each of the NOID's stated grounds. As to judging, it stated that no minimum-event, minimum-volume, or "extensive period" requirement appears in 8 C.F.R. § 204.5(h)(3)(iv), and that the selection basis appears on the face of Unifacear's own invitation. As to authorship, it stated that citation counts appear nowhere in the statute or regulation, that citation analysis measures influence within the academy rather than among industry practitioners, and that the demand that the work have "advanced the field and set him apart" imports the separate original-contributions criterion into the authorship criterion. As to the critical role, it stated that the ground contradicts itself by acknowledging "progressive experience gained over years" while asserting the absence of an extensive period; that the record documents the 2011-2018 tenure; and that a requirement of impact "beyond his employer" imports the original-contributions criterion into 8 C.F.R. § 204.5(h)(3)(viii). As to "sustained" acclaim, it stated that the statute asks whether acclaim "has been demonstrated," INA § 203(b)(1)(A)(i), a

retrospective standard that does not require perpetual present-tense peak activity, and that the record satisfies even the NOID's stricter reading because the application's public adoption has never stopped.

42. Dr. Hansen's opinion letter states that he has no relationship with Mr. da Silva or Fujioka and no interest in the outcome. Drawing on more than four decades in computer science and software engineering, including service as a paper reviewer and conference chair for the Consortium for Computing Sciences in Colleges, a reviewer of research proposals for the National Science Foundation, and a member of the Educational Testing Service's Major Field Test development committee in computer science, Dr. Hansen explains how excellence is measured in applied software engineering, where "the clearest evidence that an engineer works at the highest level is the scale and business-criticality of the systems an organization is willing to place in their hands, the measurable results those systems produce, and the extent to which the work is adopted and depended upon after it is built," rather than citation counts. He concludes that Mr. da Silva "belongs to the small group of practitioners who operate at the very top of applied software engineering, and his recognition in the field has been sustained and has grown steadily for more than a decade." He addresses directly the NOID's three grounds: that "the significance of an evaluator role is not measured by how often it is repeated

but by the authority behind the invitation and the caliber of what is being judged"; that in applied engineering "the meaningful measure of a written contribution is whether the ideas are put to use, not how many times a paper is cited," and that Mr. da Silva's SMDC research produced a system an institution adopted and still runs; and that Mr. da Silva's influence "has never been confined to a single employer," because the Pedido PA methodology was published as a case study in an international journal and the Gasto na Medida application reached users throughout Brazil.

43. The NOID response separately preserved, without conceding that any further criteria-stage showing was required, the arguments that the record satisfies the original-contributions criterion, 8 C.F.R. § 204.5(h)(3)(v), and the awards criterion, 8 C.F.R. § 204.5(h)(3)(i). It preserved for judicial review the objection that a denial resting on "any citation-count requirement for published work, any minimum-frequency or minimum-volume requirement for judging, any requirement that a critical role for one organization transform the field as a whole, any media-promotion requirement for awards, any fragmented, non-cumulative final merits analysis, or any 'recency' or perpetual-peak gloss on 'sustained' acclaim" would be not in accordance with law and in excess of statutory authority under 5 U.S.C. § 706(2)(A) and (C).

### D. The Decision

44. On July 24, 2026, USCIS denied the Petition in a decision issued from its Texas Service Center over the signature of Defendant Selby.

45. The Decision's analysis of the criteria again found three satisfied. As to judging: "The petitioner submitted letters of confirmation from UNIFACEAR showing that the petitioner was judging the work of other researchers in the field of engineering. The evidence submitted in support of this criterion is sufficient to meet the requirements." As to authorship: "The petitioner submitted documentation about the professional publishing house that confirmed the petitioner's book publication in 2025, a copy of the book, and the petitioner published scholarly articles in the field of IT. The evidence submitted in support of this criterion is sufficient to meet the requirements." As to the critical role: "The petitioner submitted documentation and letters establishing that he played a critical role for Fujioka in Brazil. Additionally, the record establishes that Fujioka Brazil has a distinguished reputation. The evidence submitted in support of this criterion is sufficient to meet the requirements."

46. The Decision found the awards, membership, original-contributions, and high-remuneration criteria not met. As to the awards criterion, it acknowledged the Santa Cruz distinction "conferred by the Rector" and "a letter from the

university explaining the significance of the award and its title," and concluded, without further reasoning, that "the evidence does not sufficiently demonstrate that the award is nationally or internationally recognized or that it is awarded for excellence in the petitioner's field of endeavor." It does not mention the governing ordinance. As to the original-contributions criterion, it acknowledged "letters of support, information about an app he developed that was published on Google Play," and "documentation regarding his published book," and concluded that "[t]here is no independent evidence showing that the app, book, or other contributions have been widely recognized, adopted, or have influenced industry practices in a meaningful way." It does not mention the application's more than 50,000 users, the Pedido PA system's quantified results, or the institutional adoption of the SMDC system. As to the high-remuneration criterion, it acknowledged the Priano Group agreement for "Senior Software Developer . . . for 2026 with a base salary of $130,000 per year," and stated that "the record has no evidence of an average salary for a senior software developer or closely related position for 2026," that the criterion "requires that the evidence must match the place of employment, either state or city within the U.S., the same year, and the same or closely related position," and that the average salaries shown for 2018 and 2020 "can not be compared to the petitioner's salary from Brazil." The Decision

twice lists, among the evidence submitted, "a printout from Onet of salaries for computer systems analysts in 2024", but never compares the $130,000 salary to that data, and then states that "the record has the year only without regional or positional comparison," although the Decision itself recites that Mr. da Silva "intends to work as a Systems Analyst and Software Developer." It does not mention the Bureau of Labor Statistics median wage comparison in Dr. Hansen's letter.

47. The Decision's final merits analysis occupies four paragraphs. It restates that "sustained" acclaim "must be maintained" and that a beneficiary "may have achieved extraordinary ability in the past but then failed to maintain a comparable level of acclaim thereafter." It then addresses, in turn, only the three categories of evidence it had credited at the criteria stage.

48. Judging. The Decision states: "The record shows that the petitioner acted as a judge at a single event in 2024, with no additional documentation indicating a sustained history of judging activities over time in national or international stage. To meet this classification, the petitioner must establish a pattern of such activities, demonstrating recognition as an expert who regularly evaluates the work of others in the field of extraordinary ability. Here, the evidence reflects only one-time participation, without documentation of extensive involvement or recognition."

49. Authorship. The Decision states: "the record lacks evidence of citations or impact, and there is no indication that the publishers of the petitioner's work are recognized as high-impact entities within the IT field. Furthermore, there is no evidence that the petitioner's book has been widely distributed or sold in significant quantities to the professional community or nationally or internationally indicative of sustained national or international acclaim. As a result, the evidence does not demonstrate a history of scholarly work published in high-impact journals o[r] publications, nor does it show a high citation rate that would distinguish the petitioner from others in the field of engineering or establish sustained national or international acclaim."

50. Critical role. The Decision states: "The letters outline his employment history and progressive experience gained over the years. However, the documentation does not provide details on how his role at Fujioka extended beyond his employer or had a significant impact on the broader field of IT or otherwise has sustained national or international acclaim. Also, there is not sufficient evidence to show that his contributions at Fujioka elevated the petitioner among a small percentage of individuals reaching to the top of the field of endeavor."

51. The Decision then concludes: "The totality of evidence does not sufficiently demonstrate that the petitioner has sustained national or international

acclaim or that he is one of the small group of individuals who has reached the top of the field of endeavor."

**E. What the Decision Did Not Consider**

52. The Decision does not mention the NOID response other than to record its receipt. It does not mention Dr. Hansen's opinion letter, by name, by description, or by exhibit number. It does not address any of the arguments the response made in answer to the NOID's three stated grounds, and it does not explain why those arguments were rejected. It does not state that the expert opinion was considered and discounted, or on what basis.

53. The Decision's final merits analysis does not mention the Gasto na Medida application, its more than 50,000 users, or its continuous public availability since 2019, although the NOID response identified that evidence as the record's direct answer to the NOID's "sustained" acclaim ground. It does not mention the SMDC system or its continued institutional use since 2013. It does not mention the Santa Cruz distinction or its governing ordinance, the IEEE membership, the Priano Group compensation, or the O*NET and Bureau of Labor Statistics occupational data against which the response measured the record. It does not mention the letters of Ricardo Padua Crispim, Software Architect at Fóton Informática, of Weysller Matuzinhos de Moura, Professional Education Manager at SENAI Goiás, of Daniel

Corrêa da Silva, SENAI FATESG, or of Monica Souza Freitas, IT Support Manager at Fujioka. The only evidence the Decision weighs at the final merits stage is the evidence it credited under the three satisfied criteria, and it weighs each of those three categories separately, asking of each whether it alone demonstrates sustained acclaim.

54. The Decision's final merits discussion of judging and of the critical role repeats, in substance and in part verbatim, the corresponding paragraphs of the NOID. Its discussion of authorship repeats the NOID's citation ground and adds, for the first time, requirements that the publishers be "high-impact entities" and that the book have been "widely distributed or sold in significant quantities." Mr. da Silva had no opportunity to respond to those grounds before the Decision issued.

55. The Decision does not identify any regulatory element, in 8 C.F.R. § 204.5(h)(2) or (3), from which the "pattern," "regularly evaluates," "high-impact," "citation rate," "widely distributed or sold," or "extended beyond his employer" requirements derive. It does not acknowledge that the NOID response objected to those requirements as extra-regulatory, and it does not rule on the objection.

56. The Decision is internally inconsistent in at least four respects. First, it finds that Mr. da Silva "played a critical role for Fujioka in Brazil," a company it finds to have "a distinguished reputation," and then discounts the same evidence at

the final merits stage because the role did not "extend[] beyond his employer," a consideration that, if it bears on anything, bears on the separate original-contributions criterion. Second, the RFE stated that "the pay slips listed him as a senior programmer," and the NOID described Mr. da Silva's 2018 Fujioka pay records as showing "a monthly salary of 4,997 Reais as Senior Programmer"; the Decision describes the same records as showing a position "of Computer Operator with a monthly base salary of BRL 4,947." The Decision does not acknowledge or explain the change in either the title or the amount, and the record documents Mr. da Silva's promotion to Senior Software Developer in 2016. Third, the Decision states that it reviewed "the petition and all of the supporting evidence" and "all evidence within the record," and then conducts a final merits determination that omits the greater part of the record. Fourth, the Decision identifies Mr. da Silva's field as "IT" and concludes that he has not established extraordinary ability "in the field of information technology," yet at the final merits stage it asks whether his publications "distinguish the petitioner from others in the field of engineering," and it describes his judging as evaluating "other researchers in the field of engineering." The Decision does not explain which field it measured him against. The record contains no such ambiguity. The Petition, the RFE response, and the NOID response each identify Mr. da Silva's field as information technology, specifically systems

analysis and software development; the Santa Cruz distinction was conferred in "Information Technology and Software Engineering"; the Unifacear committees on which he served evaluated work in the Systems Analysis and Development program; and Dr. Hansen's comparison of applied software engineers with academic researchers is drawn within that same field. The engineering label originates with the agency. The NOID described the Unifacear evaluations as "judging the work of research of others in the field of engineering", and the Decision repeated that description at the judging criterion and carried it into its final merits analysis, where it faulted the record for failing to "show a high citation rate that would distinguish the petitioner from others in the field of engineering". The final merits question is whether Mr. da Silva is among "that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2). By measuring his citation record against engineering generally, a larger and academically oriented population, the Decision misidentified the comparison group the regulation requires. The same error runs through the Decision's treatment of the evidence: having recast Mr. da Silva's applied work as academic research in engineering, the Decision faulted the record for lacking the "high citation rate" and "high-impact journals or publications" characteristic of an academic researcher, a

measure that does not fit a practitioner in systems analysis and software development.

57. The Decision cannot be sustained on grounds the agency did not state. The evaluation of Dr. Hansen's opinion, of the Gasto na Medida adoption evidence, of the SMDC adoption evidence, and of the remainder of the record at the final merits stage is committed to the agency in the first instance, and a reviewing court may not supply it. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

### F. A Post-Filing Reopening Would Not Moot This Action or Launder the Decision's Defects

58. USCIS may reopen or reconsider one of its decisions on its own motion. 8 C.F.R. § 103.5(a)(5).

59. On information and belief, when its petition denials are challenged in federal district court, USCIS has a practice of exercising that authority strategically: reopening the challenged denial sua sponte after the complaint is filed, issuing a new request for evidence or notice of intent to deny, and thereafter denying the petition again on the same record, this time in a decision written with the benefit of the complaint, engineered to cure the stated defects of the first. The purpose and effect of that maneuver are to defeat or delay judicial review of the decision actually

made, and to substitute, for the reasons the agency gave when it acted, reasons its litigators composed afterward.

60. The APA forecloses that substitution. A reviewing court judges agency action solely by the grounds the agency invoked when it took the action, *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943), and an agency that elects to rely on new reasons must take new agency action, subject to review on its own terms; it may not deploy the new reasons in defense of the old action. *Dep't of Homeland Security v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20-24 (2020).

61. Nor would a sua sponte reopening moot this action. A defendant's voluntary cessation of challenged conduct moots a case only if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000), and that exacting standard governs the government no less than private parties, *FBI v. Fikre*, 601 U.S. 234, 241 (2024). Reopening would give Mr. da Silva nothing he seeks in this action: he seeks approval of the Petition, to which the administrative record entitles him. A reopening followed by a second denial would confirm, not eliminate, the live controversy; a reopening followed by indefinite further process would withhold the benefit while purporting to erase the decision

that denied it. Either way, the controversy between the parties, namely Mr. da Silva's entitlement to the classification on this record, remains.

62. For the same reasons, any request by Defendants for a voluntary remand that is not accompanied by a confession of error and vacatur should be denied or strictly conditioned. An agency seeking remand without confessing error must, at minimum, articulate a substantial and legitimate concern warranting reconsideration, *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001), and remand is not a device by which an agency may retract a decision for the purpose of reissuing it in more defensible prose. Mr. da Silva will oppose any remand that is not confined to the existing administrative record, bounded by a date certain, and subject to this Court's retained jurisdiction.

63. Should USCIS nonetheless reopen and issue a successor decision denying the Petition, that decision will be final agency action arising from the same transaction and occurrence, and Mr. da Silva will seek leave to challenge it in this action by supplemental pleading under Federal Rule of Civil Procedure 15(d), rather than beginning anew.

## COUNT ONE

## (Administrative Procedure Act, 5 U.S.C. § 706(2)(A): Arbitrary and Capricious Agency Action)

64. Plaintiff realleges and incorporates by reference each allegation set forth above.

65. The APA requires a reviewing court to hold unlawful and set aside agency action that is “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.” 5 U.S.C. § 706(2)(A). Agency action fails that standard where the agency has failed to consider an important aspect of the problem, offered an explanation that runs counter to the evidence before it, or reached conclusions unsupported by a rational connection to the facts found. *State Farm*, 463 U.S. at 43; *Judulang v. Holder*, 565 U.S. 42, 53 (2011); *Miccosukee Tribe of Indians of Fla. v. United States*, 566 F.3d 1257, 1264 (11th Cir. 2009). Review proceeds on the administrative record that was before the agency when it decided, and the court “may not supply a reasoned basis for the agency’s action that the agency itself has not given.” *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng’rs*, 833 F.3d 1274, 1285 (11th Cir. 2016) (quoting *State Farm*, 463 U.S. at 43); *Preserve Endangered Areas of Cobb’s History, Inc. v. U.S. Army Corps of Eng’rs*, 87 F.3d 1242, 1246 (11th Cir. 1996).

66. The Decision is arbitrary and capricious because it failed to consider the NOID response and the independent expert opinion submitted with it. The response and Dr. Hansen’s letter were directed to the precise question on which the denial

rests, the final merits determination, and they answered each ground the NOID stated. An agency that records the receipt of a submission and then decides the question the submission addresses without engaging it has failed to consider an important aspect of the problem. *State Farm*, 463 U.S. at 43. The agency's own guidance recognizes that expert opinion letters are to be considered and weighed, and its Decision gives no indication that this one was. The NOID itself represented that "USCIS will carefully review any evidence that the petitioner submits," and the RFE that the final merits determination would "evaluate all of the evidence in the record."

67. The Decision is arbitrary and capricious because its final merits determination did not evaluate the evidence "in its entirety," as the agency's own framework requires, but instead evaluated only the evidence submitted under the three criteria found satisfied, and evaluated each of those three categories in isolation. The agency did not weigh, and does not mention, the Gasto na Medida adoption evidence, the SMDC adoption evidence, the Santa Cruz distinction and its governing ordinance, the IEEE membership, the compensation evidence, the occupational baseline data, or the letters of Mr. Padua, Mr. Matuzinhos de Moura, Mr. Corrêa da Silva, and Ms. Souza Freitas. A conclusion stated to rest on "the

totality of evidence" that in fact rests on a fraction of it has no rational connection to the record. *State Farm*, 463 U.S. at 43.

68. The Decision is arbitrary and capricious because its explanation runs counter to the evidence before the agency. It finds the record lacking in evidence that Mr. da Silva's work "extended beyond his employer" when the record documents an application adopted by more than 50,000 members of the public, a methodology published in an international journal, a system adopted by an academic institution, and an examination-committee appointment and a merit distinction conferred by two further institutions with no employment relationship to him. It finds "no indication of a sustained history" of recognition when the record documents recognition, in differing forms and from unrelated sources, from 2011 to 2025. It finds the record lacking in wage comparison data when the O*NET profile for Computer Systems Analysts was before it and the Bureau of Labor Statistics comparison was set out in the expert letter. The RFE had itself identified Department of Labor wage information, expert testimony, and evidence of implementation by others as evidence Mr. da Silva could submit; he submitted each, and the Decision does not engage any of it.

69. The Decision is arbitrary and capricious because it is internally inconsistent, in the respects alleged above: it credits Fujioka's distinguished

reputation and Mr. da Silva's critical role there and then discounts the same evidence for want of impact beyond Fujioka; it recharacterizes the same pay records that the NOID described as those of a "Senior Programmer" as those of a "Computer Operator," without explanation and contrary to the record; it recites that it reviewed all of the evidence while omitting most of it from the determination on which the denial rests; and it measures Mr. da Silva against "others in the field of engineering" while concluding that he lacks extraordinary ability "in the field of information technology." Contradictory findings are the antithesis of reasoned decisionmaking, and an agency may not depart from a position it took earlier in the same adjudication without acknowledging and explaining the departure. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

70. The Decision is arbitrary and capricious because it departed, without acknowledgment or explanation, from the agency's own operative guidance directing officers to consider all of the evidence in the totality at the final merits stage and to articulate the specific reasons for the conclusion reached. An agency must follow its own rules. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266-67 (1954).

71. The Decision is arbitrary and capricious because its conclusions on the awards, original-contributions, and high-remuneration criteria are conclusory: it recites the evidence, recites the criterion, and announces that the criterion has not been met, without identifying which document fails which regulatory element and why, and without addressing the ordinance, the adoption figures, or the wage data that the record supplied in direct answer to the RFE and NOID. The agency's action must be upheld, if at all, on the basis the agency itself articulated, *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943), and the basis articulated here does not connect the record to the result.

72. The errors are not harmless. The denial rests entirely on the final merits determination, and the evidence the agency failed to consider was the evidence the petitioner submitted on that very question. The evaluation of that evidence is committed to the agency in the first instance, and the Court may not supply it. *Chenery*, 332 U.S. at 196.

73. Plaintiff has been injured by the unlawful denial of his Petition, including the loss of the immigrant classification to which he is entitled, the February 6, 2026 priority date that attaches to it, and the eligibility to apply for adjustment of status that follows from it.

## COUNT TWO

**(Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C): Action Not in Accordance with Law and in Excess of Statutory and Regulatory Authority: Imposition of Extra-Regulatory Requirements)**

74. Plaintiff realleges and incorporates by reference each allegation set forth above.

75. The APA requires a reviewing court to hold unlawful and set aside agency action "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). USCIS may not impose evidentiary or substantive requirements beyond those set forth in 8 C.F.R. § 204.5. *Kazarian*, 596 F.3d at 1121-22. After *Loper Bright*, 603 U.S. 369, the best reading of the statute and regulation governs, and the agency's contrary gloss commands no deference. Nor does the agency's reading of its own regulation, where the text is not genuinely ambiguous. *Kisor*, 588 U.S. at 573-75.

76. The statute requires extraordinary ability "demonstrated by sustained national or international acclaim." 8 U.S.C. § 1153(b)(1)(A)(i). The Decision construed "sustained" to require acclaim "maintained" at "a comparable level" to the present, and applied that construction to discount recognition dated 2024 and earlier. The statutory text is retrospective: it asks whether acclaim "has been demonstrated." It does not require that every form of recognition be ongoing, and it

does not require that a professional whose work has been continuously relied upon since 2011 and continuously adopted by the public since 2019 also show present-tense recognition in each category of evidence. The Decision's construction adds a requirement the statute does not contain.

77. The Decision conditioned the weight of Mr. da Silva's participation as a judge of the work of others, at the final merits stage, on a showing of "a pattern of such activities," of "regular[]" evaluation of the work of others, and of "extensive involvement." Neither 8 C.F.R. § 204.5(h)(3)(iv), which requires only "participation . . . as a judge of the work of others," nor 8 C.F.R. § 204.5(h)(2) contains a frequency, volume, or duration requirement, and the agency may not re-impose at the second step, as a condition of weight, a requirement the regulation does not contain at the first.

78. The Decision conditioned the weight of Mr. da Silva's scholarly authorship on "citations," on "a high citation rate," on publication by "high-impact entities" or "high-impact journals," and on proof that his book was "widely distributed or sold in significant quantities." The regulation requires "authorship of scholarly articles in the field, in professional or major trade publications or other major media." 8 C.F.R. § 204.5(h)(3)(vi). It contains no citation, impact-factor, or

sales requirement, and the record explained, without contradiction, why citation metrics do not measure the influence of an industry practitioner's work.

79. The Decision conditioned the weight of Mr. da Silva's critical role for Fujioka on a showing that the role "extended beyond his employer" and had "a significant impact on the broader field of IT." The regulation requires "a leading or critical role for organizations or establishments that have a distinguished reputation." 8 C.F.R. § 204.5(h)(3)(viii). It contains no field-wide-impact element; that inquiry belongs, if anywhere, to the separate original-contributions criterion, § 204.5(h)(3)(v), and the agency found the critical-role criterion satisfied on this record.

80. The Decision conditioned the high-remuneration criterion, 8 C.F.R. § 204.5(h)(3)(ix), on evidence that "must match the place of employment, either state or city within the U.S., the same year, and the same or closely related position," and declared that the U.S. average-salary data in the record "can not be compared to the petitioner's salary from Brazil." The regulation requires evidence that the beneficiary "has commanded a high salary or other significantly high remuneration for services, in relation to others in the field." It prescribes neither a same-city, same-year matching rule nor a categorical exclusion of comparisons across the

beneficiary's career, and the agency applied its rule to disregard the federal occupational wage data in the record.

81. The Decision conditioned the original-contributions criterion, 8 C.F.R. § 204.5(h)(3)(v), on "independent evidence showing that the app, book, or other contributions have been widely recognized, adopted, or have influenced industry practices in a meaningful way," while disregarding record evidence that the application was adopted by more than 50,000 members of the public and that the SMDC system was adopted by an academic institution. The regulation requires "original . . . business-related contributions of major significance in the field"; it does not require industry-wide transformation, and the agency may not find record evidence of adoption absent.

82. Each of these extra-regulatory requirements exceeded the authority the statute and regulation confer, was not in accordance with law, and was objected to in the administrative record. Each infected the final merits determination on which the denial rests.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Declare that Defendants' denial of the Petition is arbitrary, capricious, an abuse of discretion, not in accordance with law, and in excess of statutory and regulatory authority, in violation of 5 U.S.C. § 706(2);

(b) Vacate and set aside the July 24, 2026 denial of the Petition;

(c) Order Defendants to approve the Petition, because the administrative record establishes Mr. da Silva's eligibility under the governing statute and regulation;

(d) In the alternative, remand the Petition to USCIS with instructions to readjudicate it consistent with the Court's opinion, on the existing record, within thirty days of the Court's order;

(e) Retain jurisdiction over this action notwithstanding any sua sponte reopening of the Decision, any new request for evidence or notice of intent to deny, or any successor decision, and declare that no such action moots this case;

(f) Condition any remand of the Petition, voluntary or otherwise, on vacatur of the Decision, adjudication on the existing administrative record without further requests for evidence absent leave of Court, and a date certain for decision;

(g) Grant Plaintiff leave, as needed, to file a supplemental complaint under Federal Rule of Civil Procedure 15(d) addressed to any successor decision on the Petition;

(h) Award Plaintiff his reasonable attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(i) Grant such other and further relief as the Court deems just and proper.

DATED: November 12, 2026

Respectfully submitted,

Priscila Pimpão (Cal. SBN 369125)
Pro hac vice application forthcoming
Gondim Law Corp.
1880 Century Park East, Suite 400
Los Angeles, CA 90067
Telephone: 323-282-7770
Email: court@gondim-law.com
Counsel for Plaintiff

/s/ Caridad Acosta
Caridad Acosta, Esq. (Florida Bar No. 1038489)
Legal Alliances PLLC
2600 Michigan Ave, Unit #452145
Kissimmee, FL 34745
Telephone: 407-879-4284
Email: caridadacostaattorney@gmail.com
Lead Counsel for Plaintiff